No. 97-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STEVEN K. HAVENS,

Plaintiff and Appellant,

v.

STATE OF MONTANA,

Defendant and Respondent.



APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Douglas J. DiRe; Knight, Dahood, McLean & Everett,
Anaconda, Montana

For Respondent:

William Evan Jones, Attorney at Law; Terry J. MacDonald,
Attorney at Law, Missoula, Montana



Submitted on Briefs: September 17, 1997

Decided:   October 23, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Steven K. Havens (Havens) sued the State of Montana (State) claiming the State's negligence in failing to install a stop light at the main entrance to the Wal-Mart store located in Butte, Montana, was a cause of the motorcycle/automobile collision in which he received injuries. The State contended that Havens was contributorily negligent because his ability to react was impaired due to his consumption of alcohol prior to the accident. Havens filed a motion in limine seeking to exclude evidence of his alcohol consumption on the day of the accident and objected at trial to the introduction of results of a toxicology report indicating that Havens had 0.068 blood alcohol concentration (BAC) and tested positive for marijuana. The District Court denied Havens' motion in limine, the case proceeded to trial and the jury found no negligence by the State. The court also denied Havens' motion for a new trial in which he contended that the court should have granted the motion in limine. Havens asserts in this appeal that the Second Judicial District Court, Silver Bow County, erred in denying, his motion in limine and as a result he was prejudiced by introduction of the toxicology report and evidence of alcohol consumption. We conclude that the District Court erred in denying Havens' motion for a new trial. We reverse and remand.

Factual and Procedural History

On the afternoon of August 12, 1993, Doug Violette (Violette) took a lunch break from his position at the Butte Wal-Mart store. Violette stopped his vehicle at a stop sign located at the main entrance to the Wal-Mart parking lot and waited before pulling out into traffic on Harrison Avenue. At the same time, Havens was driving his motorcycle south on Harrison Avenue at the posted speed limit of 45 miles per hour. Violette pulled out of the parking lot onto Harrison Avenue and into the path of Havens' motorcycle. The vehicles collided, and Havens was severely injured. Law enforcement cited Violette for violation of õ 61-8-341, MCA, failing to yield the right-of-way. Havens settled his claim against Violette. Havens then filed suit against the State and Wal-Mart Stores, Inc., alleging negligence in failing to install a stop light at the busy Wal-Mart intersection. The District Court dismissed Wal-Mart on a motion for summary judgment, finding that Wal-Mart owed no duty to Havens to install traffic signals.

Prior to trial, Havens moved to exclude evidence of his alcohol consumption on the day of the accident. Havens argued that his alcohol consumption did not contribute to the accident and therefore was not relevant to the case. The State objected to the

motion citing this Court's recent decision in Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122, 139, and asserted that it "[would] present evidence and argue that its own conduct was not, in a natural and continuous sequence, a substantial factor in bringing about injury to the Plaintiff." It also claimed that it should be allowed to present testimony that Havens' ability to react was impaired. The State asserted that it "intend[ed] to call Dr. James M. Miller, P.E. as an expert. . . . He [would] testify that Mr. Havens' 0.068 blood alcohol level decreased his ability to respond and react in an emergency situation." Finally, the State argued that "[Havens'] inability to properly respond, coupled with Doug Violette's violation of the law, was an intervening, superseding cause of the accident in this matter." In light of the State's representation that, in support of its claim of contributory negligence, it would present expert testimony that Havens' alcohol consumption decreased his ability to react to an emergency, the District Court denied Havens' motion in limine.

Since the court had denied his motion in limine, Havens' counsel, at trial, felt he had no choice but to "elicit testimony from Steven Havens that he had consumed three beers on the day of the accident and . . . smoked marijuana four days before the accident." The State, however, did not offer evidence that Havens' alcohol consumption contributed to the accident. In fact, Sergeant James Kilmer, the investigating officer, testified that there was nothing Havens could have done to avoid the collision and that Havens' alcohol consumption did not play a part in the collision. Moreover, Dr. James M. Miller, the State's expert witness, did not testify that Havens' alcohol consumption reduced his ability to react as the State contended in opposing Havens' motion in limine. Rather, Dr. Miller testified that Havens was not negligent in failing to stop his motorcycle or in failing to avoid the accident. The jury returned a defense verdict, finding the State was not negligent.

Following trial, Havens moved for a new trial, asserting that since Havens' negligence was not a contested issue in the case, the evidence regarding Havens' alcohol consumption and the results of the toxicology report had no relevance, severely prejudiced Havens, and, therefore, should have been excluded. The State, in its brief in opposition to Havens' motion for a new trial, continued to assert that Havens' contributory negligence was an issue at trial and the evidence regarding his alcohol consumption was properly admitted. In addition, the State contended that because the jury found no negligence by the State and did not reach the issue of contributory

negligence, Havens' negligence was never considered by the jury and Havens, therefore, could not have been prejudiced by admission of the evidence. The District Court denied Havens' motion for a new trial, and Havens appealed to this Court.

We address the following issue:

Did the District Court err in denying Havens' motion for a new trial when the State failed to make a connection between Havens' alcohol consumption and the cause of the accident?

Discussion

Rule 59(a), M.R.Civ.P., allows a motion for a new trial to be granted for any reason provided by statute. Section 25-11-102, MCA, sets forth the grounds for a new trial and provides that "any order of the court or abuse of discretion by which either party was prevented from having a fair trial" is sufficient grounds for a new trial if the substantial rights of a party are materially affected. The decision to grant or deny a motion for a new trial is within the sound discretion of the district court and will not be overturned absent a showing of manifest abuse of discretion. Allers v. Riley (1995), 273 Mont. 1, 4, 901 P.2d 600, 602; Larson v. K-Mart Corp. (1990), 241 Mont. 428, 430-31, 787 P.2d 361, 362.

Havens asserts that the District Court erred in denying his motion in limine to exclude evidence of his alcohol consumption and the toxicology report because that evidence was not relevant to the central issue at trial. Rule 401, M.R.Evid., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402, M.R.Evid., provides that relevant evidence is generally admissible. However, Rule 403, M.R.Evid., creates an exception to Rule 402's general admissibility standard. Rule 403, M.R.Evid., allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Havens asserts that the toxicology report and evidence of his alcohol consumption were irrelevant. He further asserts that even if the evidence had probative value, the probative value was outweighed by the unfair prejudice that resulted from its admission; therefore, it should have been excluded.

The plaintiff/appellant in Kimes v. Herrin made a similar argument. Kimes v. Herrin (1985), 217 Mont. 330, 705 P.2d 108. In Kimes, the 2-year-old plaintiff was injured in an automobile accident and began exhibiting symptoms several years later. Kimes, 705 P.2d at 110. The defendant proposed to introduce evidence of family

fighting
and drinking by plaintiff's father in support of its theory that her symptoms were caused
by her environment rather than the collision.  Kimes, 705 P.2d at 110.  The district court
was concerned about the admissibility of this evidence; however, it allowed the testimony
because the defendant assured the court that the evidence at trial would medically link
home environment to the plaintiff's symptoms. Although experts from both sides indicated that poor home environment may cause similar symptoms, there was no evidence presented at trial establishing a medical connection between poor home environment and the plaintiff's symptoms.  Accordingly, on appeal, we held that the prejudicial effect of the evidence outweighed its probative value and the evidence should
have been excluded under Rule 403, M.R.Evid.  Kimes, 705 P.2d at 110.

In the case at hand, the State, like the defendant  in Kimes, assured the District
Court that it would produce testimony linking Havens' alcohol consumption as a contributory factor in the accident.  As a  result of this assurance, the District Court
denied Havens' motion in limine.  Despite the State's assurance, however, there was no
evidence produced at trial that established a connection between Havens' alcohol consumption and the cause of the accident.  In fact, Dr. Miller testified that Havens was
not negligent in failing to avoid the accident.  Moreover, Sergeant Kilmer testified that
not only did Havens' alcohol consumption not play a part in the collision, but, "in [his]
opinion Mr. Havens couldn't avoid the accident.  He had a car that pulled out in front
of him, it was too late to do anything." Therefore, under Rule 402, M.R.Evid., the results of the toxicology report and evidence of Havens' alcohol consumption should have
been excluded because,  in the absence of testimony linking the evidence to the question
of causation, it was irrelevant.  Furthermore, the  highly prejudicial nature of the evidence created a danger of confusion on the issue of causation.

When the District Court denied Havens' motion in limine, Havens' counsel felt constrained to defuse the prejudice which would inhere from introduction of BAC evidence  by having Havens himself testify regarding his alcohol consumption rather than
wait for the defense to broach the topic.  Although the State contends that any error was
harmless since the jury did not reach the question of Havens' contributory negligence, the
fact is that, given our society's grave and well-founded concern with driving under the
influence of alcohol, evidence of alcohol consumption by a driver involved in a collision
is highly prejudicial.

Although we rarely find a manifest abuse of discretion in the denial of a motion for a new trial, there are certain instances in which the prejudicial matter at issue undermines the fairness to such a degree that a new trial is the only remedy. In Kuhnke v. Fisher (1984), 210 Mont. 114, 683 P.2d 916, we addressed the question of improper argument to the jury and noted that "[t]he only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial." Kuhnke, 683 P.2d at 922. In Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717, we were confronted with a situation wherein jurors had been exposed to a prejudicial newspaper article about the case under consideration. The district court denied both a motion for a mistrial and a motion for a new trial. We reversed and held that "[t]he guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial. Sec. 27, Art. III, Montana Constitution [now Sec. 17, Art. II]." Putro, 410 P.2d at 722. We also reasoned "that unexplained prejudicial references to important matters in litigation may have a 'natural tendency' to infect the proceedings with an unfairness that can be corrected only by starting anew the legal contest." Putro, 410 P.2d at 722. When Havens was forced to introduce evidence of his own alcohol consumption, that cast his entire presentation to the jury under a shroud of prejudice. It would be unrealistic to assume that evidence of alcohol consumption by Havens did not have a "natural tendency" to infect the entire proceedings with an unfairness which can only be remedied with a new trial.

The District Court did not err when it initially denied Havens' motion in limine based upon the State's assurance that the testimony to be presented at trial would link Havens' alcohol consumption to the question of causation. However, after the verdict, when Havens renewed his contention in the context of a motion for a new trial, the court should have reconsidered its prior ruling in light of the State's failure to fulfill its promise to elicit testimony establishing Havens' alcohol consumption as a factor in causing the collision. Havens persistently contended before, during and after the trial that the evidence was not relevant and that it would and did cause prejudice materially affecting his right to a fair trial. As a result, we hold that the District Court's denial of the motion for a new trial constituted a manifest abuse of discretion. Reversed and remanded for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/  TERRY N. TRIEWEILER
/S/  KARLA M. GRAY
/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.